CASE 29.—PROSECUTION AGAINST BURK'S SPRINGS DIS-
TILLING COMPANY FOR VIOLATING THE LOCAL
OPTION LAW.—February 24, 1910.

## Commonwealth v. Burk's Springs Distilling Co.

Appeal from Marion Circuit Court.

I. H. THURMAN, Judge.

Demurrer to indictment sustained and the common-
wealth appeals.—Reversed.

1.  Statutes—Plurality of Subjects—Sale of Intoxicating Liquors.
—Acts 1908, p. 55, amending section 1 of Act March 22, 1904
(Acts 1904, c. 76), amended by Act March 21, 1906 (Acts 1906,
c. 87), regulating the sale of intoxicating liquors by whole-
sale, so that act as amended shall read, "It shall be un-
lawful to sell by wholesale spirituous * * * liquors (ex-
cept) manufacturers selling liquor of their own make at
the place of manufacture to a wholesale dealer or a
licensed retail dealer in any district where their sale has
been forbidden by a special act of the General Assembly
or by vote of the people, and any person violating this act
shall be deemed guilty of violation of the local option law
and subject to punishment according to its provisions"—
is not in violation of Const. section 51, providing that no
law shall relate to more than one subject.

2.  Statutes—Subjects and Titles of Acts—Sale of Intoxicating
Liquors.—Acts 1908, p. 55, entitled "An act to amend an
act entitled, 'An act to regulate the sale of intoxicating
liquors by wholesale in this commonwealth,' which was ap-
proved March 22, 1904, and amended by an act approved
March 21, 1906" (Ky. St. section 2558a), provides that it
shall be unlawful to sell by wholesale, spirituous liquors,
except manufacturers selling liquor of their own make at
the place of manufacture to a wholesale dealer, or a li-
censed retail dealer, in any district where their sale has
been forbidden by a special act of the General Assembly,
or by a vote of the people, and any person violating this
act shall be deemed guilty of a violation of the local option

law and subject to a punishment according to its provisions. Held, that this act was not in violation of Const. section 51, providing that the subject of each act shall be expressed in its title.

3. Statutes—Amendment—Setting Forth Provision as Amended.—Such statute is not violative of Const. section 51, providing that no law shall be amended by reference to its title only, but so much thereof as is amended shall be re-enacted and published at length.

4. Statutes—Certainty.—The act is not void for uncertainty.

5. Intoxicating Liquors—Local Option—Effect of Adoption—Subsequent Legislation.—Under Const. section 61, providing for local option, the vote of the people in a particular community in favor of local option under the law then in force will not deprive the Legislature of the right at any time to alter, amend, change, or repeal the law.

6. Constitutional Law—Equal Protection of the Laws—Intoxicating Liquors.—Ky. St. section 2558a, making it unlawful to sell spirituous liquors by wholesale, except manufacturers selling liquor of their own make at the place of manufacture to wholesale dealers or licensed retail dealers in any district where their sale has been prohibited, is not in violation of the fourteenth amendment to the federal Constitution, guaranteeing equal protection of the laws, in that it discriminates between manufacturers in local option districts and those not.

JAMES BREATHITT, Attorney General, TOM B. McGREGOR, Assistant Attorney General, R. L. DURHAM and W. W. SPALDING for commonwealth.

H. W. RIVES and H. L. McELROY for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Appellee, Burk's Springs Distilling Company, was indicted by the grand jury of Marion county for violating section 2558a, Ky. St. (Russell's St. sec. 3646), which is a part of the local option law. The trial court sustained a demurrer to, and dismissed, the indictment. To review the propriety of this action, the commonwealth appeals.

No point is made as to the sufficiency of the allegations contained in the indictment. It is insisted, however, that the act of 1908, which is section 2558a, is invalid for various reasons. That act is as follows:

"Be it enacted by the General Assembly of the commonwealth of Kentucky:

"Section 1. That section 1 of an act to regulate the sale of intoxicating liquors by wholesale in this commonwealth, which was approved March 22, 1904, and amended by an act approved March 21, 1906, be, and the same is hereby amended, by adding after the word, manufacture, in the fifth line of said act as printed in the act of 1906, the following words, to-wit: 'To a wholesale dealer or a licensed retail dealer;' so that said act as amended shall read as follows:

"Section 1. It shall be unlawful to sell by wholesale any spirituous, vinous, malt or other intoxicating liquors, regardless of the name by which it is called, (except) manufacturers selling liquors of their own make, at the place of manufacture to a wholesale dealer or a licensed retail dealer in any county, district, precinct, town or city where the sale of such liquors has been prohibited by special act of the General Assembly or by vote of the people under the local option act. Any person violating this act shall be deemed guilty of violating the local option law and shall be subject to a trial and punished according to the provisions of same and its amendments." Sess. Acts 1908, p. 55.

This act does not violate section 51 of the Constitution, which provides: "No law enacted by the General Assembly shall relate to more than one

subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be reenacted and published at length." The act relates to but one subject—the regulation of the sale of intoxicating liquors by wholesale. It does not attempt to regulate the business of manufacturing intoxicating liquors; nor was it intended for that purpose. The only authority a manufacturer has to sell is by wholesale. When he sells, it is as a wholesale dealer. Therefore the title of the act was sufficient to include a manufacturer when it undertook to amend an act to regulate the sale of intoxicating liquors by wholesale. The act in question does not purport to amend the acts of March 22, 1904 (Acts 1904, c. 76) and of March 21, 1906 (Acts 1906, c. 87), by reference to their titles only; but so much of those acts as is amended is reenacted and published at length. Nor is the act void for uncertainty. Its language is susceptible of only one meaning. It applies only to manufacturers making sales in local option territory, and has no application to sales made elsewhere.

It is next insisted that the act in question is inoperative in local option territory where the law was different when the vote was taken. When the vote was taken in Marion county, the law was as follows: "The provisions of this act shall not apply to any manufacturer or wholesale dealer who, in good faith and in the usual course of trade, sells by the wholesale in quantities of not less than five gallons, delivered at one time, and not to be drunk on the premises." By the act of March 22, 1904, wholesalers were not included within the exceptions men-

tioned in section 2558a. Only manufacturers selling liquors of their own make were permitted to sell in local option territory. The act of 1904 was again amended by the act of 1906. The latter reads: " * * * Except manufacturers selling liquors of their own make at the place of manufacture." The act in effect now—section 2558a—reads: " * * * Except manufacturers selling liquors of their own make at the place of manufacture to a wholesale dealer or a licensed retail dealer."

The argument is made that, under section 61 of the Constitution, the people of a particular community are given the right to determine whether or not spirituous, vinous, or malt liquors shall be sold therein; that, having voted in favor of local option, when a particular law was in force, the Legislature has no right, so far as that community is concerned, to amend or change the law. The law in question differs materially from the law in force at the time the vote was taken in Marion county. Appellees, therefore, urge that it is inapplicable to them. It will be observed, however, that section 61 of the Constitution simply provides for submitting to the people of any county, city, town, district, or precinct the question whether or not spirituous, vinous, or malt liquors shall be sold. It does not deny to the Legislature, where the vote is in favor of local option, the right to determine when and under what circumstances sales may be made. Thus in the case of Crigler, etc., v. Commonwealth, 120 Ky. 512, 87 S. W. 276, 27 Ky. Law Rep. 918, this court held that notwithstanding the local prohibition law, commonly called the "Five Counties' Act," approved April 4, 1884 (Acts 1883-84, c. 598), forbade the sale of liquor by retail in Laurel county, the

act of March 10, 1894 (Acts 1894, c. 52), as amended (Acts 1902, c. 14), should be construed as a part of the act of 1884, regulating and controlling the former in the matter of procedure, the quantity of liquor to be sold, and the punishment to be inflicted; in other words, that the act of 1894 was operative in Laurel county without the necessity of a vote by the people. The same rule is announced in the case of Locke v. Commonwealth, 74 S. W. 654, 25 Ky. Law Rep. 76.

In the case of Tabor v. Lander and Haynes v. Commonwealth, 94 Ky. 237, 21 S. W. 1056, this court held that, where the general local option law had been voted into operation in a civil district of which a city formed a part, an amendment to the city charter conferring for the first time authority on the city council to license taverns and coffee houses, with the privilege of retailing liquors in the city, repealed the local option law so far as the city was concerned. In discussing the question the court said: "In the district a vote was taken under the provisions of the law in August, 1884, and again in 1890, resulting each time against the sale. In April, 1888, an amendment to the charter of the city of Hawesville was adopted by the Legislature, conferring for the first time authority on the city council to license taverns and coffee houses with the privilege of retailing liquors in the city, and it is now insisted that this act repealed the operation of the local option law then in force, so far as the city was concerned. In the case of Gifford v. Commonwealth, 2 Ky. Law Rep. 437, it was held by this court that a section in the charter of the town of Falmouth, passed by the Legislature in 1878, granting the council of that town the power to license

and regulate the sale of liquors, operated as a repeal of the general local option law, which was then in force in the town, because repugnant thereto and inconsistent therewith, and the same construction has been adopted by the courts of other states. Whisenhunt v. State, 18 Tex. App. 491. And it would· seem, outside of this direct authority, that such must be the necessary result of such legislation. The Legislature has complete control of the subject. It may say that liquor shall not be sold in a given territory, or that the question of its sale shall be left to all the voters therein, or that liquors may be sold in a given locality, oƚ that the question may be left to the council of a city or board of trustees. In this case the legislative body must have known that the local option law had been voted into operation in Hawesville, and was in force in April, 1888, and its action in making it thereafter lawful for the council of said city to fix the rate of city tax for the privilege of selling liquors by retail in the city must have been intended to vest the power of licensing the sale in a different set of electors—that is, in the councilmen of the city, instead of the voters in the district. The city was incorporated in 1882, and while the powers of the city council are set out in great detail, and the trades and occupations placed under the control and regulation of that body are extraordinarily numerous, the right to license, regulate, or control the liquor trade is nowhere conferred; and while the local option law was in full force, and in operation in the district, the Legislature enacts a law directly repugnant to, and inconsistent with, the general law, and specially empowers the city authorities to exercise its taxing power on this special traffic for the

benefit, it is alleged, of the common schools of the city. We think a clear intent to repeal or suspend the operation of the general law is evident.''

In 19 Am. & Eng. Ency. of Law, p. 513, the rule is thus stated:

''Where the provisions of a local option law have been adopted in certain territory, the subsequent legislative enactment of a law applicable to such territory which is inconsistent with the local option law operates to repeal the latter.'' So, too, it has been held that persons who are excepted from the prohibitory features of the local option law under certain conditions and restrictions do not require any such vested right to sell under the conditions prescribed by the law in force at the time of its adoption as to preclude the Legislature from thereafter imposing additional conditions to be operative in territory which had previously adopted the law. Snearley v. State, 40 Tex. Cr. R. 507, 52 S. W. 547, 53 S. W. 696. From the above authorities we conclude that the vote of the people in a particular community in favor of local option under the law then in force will not operate to deprive the Legislature of the right at any time to alter, amend, change, or repeal the law. That being the case, the act of 1908 was in force in the territory where appellee lived, and it is liable to punishment for any violation thereof.

Lastly, it is insisted by appellee that the act in question violates the fourteenth amendment to the Constitution of the United States, in that it denies to it the equal protection of the law. In this connection, it is contended that the act discriminates between manufacturers in local option districts and those not in local option districts, in that the former

are permitted to sell only to wholesale dealers or licensed retail dealers, while the latter may sell to any one. The fourteenth amendment, however, does not deny to the lawmaking power the right to make a reasonable classification. It is within the power of the Legislature to classify manufacturers upon the basis of the location of their plants with respect to local option territory. The act applies alike to all manufacturers in local option territory. It does not discriminate against them, because it does not apply to manufacturers not similarly situated. The purpose of the Legislature was to make the local law effective. To do this, additional restrictions were necessary where the place of manufacture was in local option territory. Appellee cannot complain of these additional restrictions when they affect all others similarly situated.

For the reasons indicated, we are of opinon that the act of 1908 is not only valid, but is operative in Marion county. That being the case, it follows that the trial court erred in sustaining appellees' demurrer to the indictment.

Judgment reversed and cause remanded, with directions to overrule the demurrer.