### Frost v. Johnston.

### Chandler, Governor et al. v. Same.

(Decided Feb. 11, 1936.)

POLK SOUTH and J. R. LLEWELLYN for appellants.

CHARLES N. HOBSON and A. T. W. MANNING for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

J. J. Davis, county judge of Jackson county, died on January 1, 1936, and on January 4, 1936, the justices of the peace of that county met in special session for the purpose of filling the vacancy caused by the death of Judge Davis, and by a vote of majority of the members of the fiscal court present, R. H. Johnston was appointed to the place. Thereafter, on January 7, the Governor appointed and commissioned John (Jack) Frost to fill the vacancy.

On January 8, Johnston instituted an action against Frost in the Jackson circuit court setting up the foregoing facts and alleging that he possessed the qualifications required by law to entitle him to hold the office of county judge of the county, and further alleged, in substance, that on January 6, 1936, a copy of the order of the Jackson fiscal court appointing him to fill the vacancy was certified by the clerk and transmitted to the Governor with a request that he be issued a commission but that the Governor wrongfully and unlawfully failed and refused to issue him a commission, and arbitrarily and without authority of law issued a commission to defendant as county judge of

Jackson county, and that the latter was attempting and threatening to usurp the privileges and duties of such office, and unlawfully and without right so to do threatened to hinder and interfere with plaintiff from assuming the duties thereof. He prayed that defendant be enjoined and restrained from qualifying or attempting to qualify or assume or discharge any of the duties of his office, and from interfering with plaintiff in the discharge of the duties and the quiet and peaceful enjoyment thereof.

Both general and special demurrer to the petition having been overruled, defendant by answer, as amended, alleged in effect that he had been duly and legally appointed and commissioned by the Governor to fill the vacancy caused by the death of Judge Davis, and that the statute under which the fiscal court purported to act in attempting to appoint plaintiff to fill the vacancy was unconstitutional, and therefore the order of the fiscal court made pursuant thereto was null, void, and of no effect. He further alleged in effect that plaintiff and one J. C. Davis were opposing candidates before the fiscal court for the appointment as county judge and for the purpose of obtaining the votes of Davis' friends, plaintiff in a speech before the court, and before the vote was taken, said that if he was elected he woud give his opponent's wife more out of the office, than he (Davis) would get out of it if he were appointed; that there would be lots of positions that would pay more than the county judge's office and he would see that his opponent's family got them; that these statements were made for the purpose of influencing members of the court who were friendly to Davis to vote for plaintiff, and were therefore in violation of the Corrupt Practice Act and disqualified plaintiff to hold the office.

The court sustained a demurrer to the answer as amended, and defendant declining to further plead, judgment was entered in accordance with the prayer of the petition, and defendant is appealing.

On January 9, R. H. Johnston filed an action in the Franklin circuit court against the Honorable A. B. Chandler, Governor of Kentucky, and John (Jack) Frost, and on allegations similar to those in his petition filed in the Jackson circuit court prayed that

Frost be enjoined and restrained from qualifying or attempting to qualify as county judge of Jackson county under the commission issued to him by the Governor, and he be required and compelled to surrender the commission; that it be canceled and held for nought, and for an injunction commanding and requiring the Governor to cancel and annul the commission issued to Frost and to immediately issue a commission to plaintiff.

The answer of defendants to this petition is in substance the same as the answer in the action in the Jackson circuit court. The court overruled the general demurrer to the petition, but sustained a like demurrer to the answer and each paragraph thereof, and defendants declining to further plead, the answer was dismissed and it was adjudged that plaintiff was entitled to the relief sought in his petition, and that the Governor be ordered and directed to immediately issue and deliver to plaintiff a commission as county judge of Jackson county. It was further adjudged that defendant Frost immediately surrender the commission issued to him by the Governor for cancellation, and same was adjudged void and of no effect and should be canceled, set aside, and held for nought. Defendants are appealing.

Upon motion of the parties, the actions have been consolidated, heard together, and will be disposed of in one opinion, since they involve the same questions of law and fact.

Counsel for appellants contend that authority is vested alone in the Governor to fill vacancies in the office of county judge and to issue commissions to his appointees to fill such vacancies, and sections 76, 140, and 152 of our Constitution are cited.

Section 76 provides:

"He [referring to the Governor] shall have the power, except as otherwise provided in this Constitution, to fill vacancies by granting commissions, which shall expire when such vacancies shall have been filled according to the provisions of this Constitution."

By section 140, county courts are created, consisting of a judge who "shall be commissioned by the gov-

ernor, and shall vacate his office by removal from the county in which he may have been elected.''

Section 152, relating to the filling of vacancies in office, in so far as pertinent, reads:

"Vacancies in all offices for the state at large, or for districts larger than a county, shall be filled by appointment of the governor; all other appointments shall be made as may be prescribed by law.''

From the foregoing it will be seen that section 76 is controlling only when not otherwise provided in the Constitution. Under section 152, the Governor is empowered to fill vacancies in offices for the state at large or for districts larger than a county, but leaves it to the General Assembly to prescribe how offices for counties at large or for districts smaller than a county may be filled. The quoted excerpt from section 152 is clear and explicit, and its meaning and purpose cannot be misunderstood; however, counsel for appellants seek to avoid its effect and meaning by argument that when these several sections are read together, the authority of the General Assembly to fill vacancies is limited to non-commissioned offices. This contention is clearly at variance with the express provisions of the Constitution, and there is nothing in the language of the sections invoked giving rise to an implication or inference that such was the intention of the framers of that instrument.

Section 152 of the Constitution provides that justices of the peace shall be commissioned by the Governor, yet this court has recognized the authority of the General Assembly to prescribe how vacancies in the office of justice of the peace may be filled. See Daugherty v. Arnold, 110 Ky. 1, 60 S. W. 865, 22 Ky. Law Rep. 1504. Since it is manifest that under section 152 of the Constitution the Legislature may by general law prescribe how vacancies in the office of county judge may be filled, it remains to be determined whether section 3758, Kentucky Statutes, as amended and re-enacted by chapter 118, sec. 1, Acts of the General Assembly of 1930, is valid and confers upon fiscal courts the authority to fill such vacancies.

Prior to the act of 1930, section 3758 provided that certain designated offices, including county judges,

should have commissions issued them by the Governor, and then provided in substance that in the event of vacancies in any office by reason of death, resignation, removal, or for any other cause, or in event of a vacancy in any other office where there is no provision of law for filling same, such vacancy should be filled by appointment of the Governor, subject to the provisions of the Constitution applicable thereto. Under the act of 1930, the county judge was omitted from the designated list of offices to whom commissions shall issue, and it is provided that if a vacancy shall occur for any reason whatsoever in the office of county judge, same shall be filled by appointment made by the fiscal court of the county at a regular or special meeting called for that purpose, with a provision that if the fiscal court fails to fill the vacancy within 10 days after it occurs, the county court clerk shall notify the Governor in writing of the vacancy, and the Governor shall immediately fill same.

With respect to the validity of the act, it is first argued in brief for appellant that it was the evident purpose of the General Assembly in re-enacting it to make the county judge a noncommissioned office, and therefore the act is invalid in toto because it contravenes section 140 of the Constitution. Section 140 of the Constitution is self-operative, and, being so, requires no legislative enactment to lend it efficacy. O'Mahoney v. Bullock, 97 Ky. 774, 31 S. W. 878, 17 Ky. Law Rep. 523. The Legislature can neither abridge or extend its provisions. In the construction of statutes, it is a general rule that courts will indulge the presumption that the lawmakers knew of existing constitutional and statutory laws.

It is next contended that the action is invalid because violative of section 51 of the Constitution, which reads:

"No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

As we understand the contention made by counsel, it is that the act of 1930 does not attempt to repeal any part of section 3758 of the Statute as it then existed, and that it is not sufficiently descriptive to give validity to that part of the act which attempts to confer upon fiscal courts the right to make an appointment to fill a vacancy in the office of county judge. So much has been written in the interpretation and construction of this section of the Constitution that anything that might be said concerning it would be mere repetition. The title to the act reads: "An act to amend and re-enact section 3758, Kentucky Statutes, Carroll's 1922 Edition." Acts 1930, c. 118.

As indicated in a number of opinions, the purpose of this provision of the Constitution is to require titles that will disclose to the reader the nature of the act, and thus prevent vicious legislation being enacted under innocent and misleading titles.

One of the leading cases dealing with section 51 which has been widely quoted is Board of Penitentiary Commissioners v. Spencer et al., 159 Ky. 255, 166 S. W. 1017, where there is a review and compilation of authorities bearing on the question. In that case it was held that the title to the act under consideration did not comply with the requirements of section 51 of the Constitution, because it was not in fact an amendment of the former act referred to in the title, but a new law entirely distinct from it, in that it created new rights and conferred new authority, no reference to which was made in the former act; but here an entirely different situation is presented, since the new act is dealing with the same subjects and there is nothing foreign to the former section in the section amended and re-enacted. The act sets forth at length how the section of the statute will read when amended and re-enacted. The Spencer Case lavs down 5 rules as gathered from opinions therein cited which for the purpose of brevity we shall not state at length, but deem it sufficient to say that an examination of these rules will at once reveal that when measured by them the act in question conforms to every requirement of the Constitution. The Spencer Case cites Ex parte City of Paducah, 125 Ky. 510, 101 S. W. 898, 899, 31 Ky. Law Rep. 170, where the title to the act in question reads,

"An Act to amend and re-enact section 3140 of the Kentucky Statutes," and wherein it was said:

> "When the Legislature amends or repeals a section of the Kentucky Statutes, and the title of the repealing or amendatory act mentions the section affected, the members of the General Assembly can at once conveniently examine the statute and ascertain the nature of the amendment. * * * We therefore conclude that the intention of the constitutional provision will be fully carried out when the title of an act calls attention to the section or chapter of the Kentucky Statutes to be repealed or amended."

In the case of Barnett et al. v. Caldwell, 231 Ky. 514, 21 S. W. (2d) 838, it is held in effect that a title to an act repealing and amending an earlier statute is sufficient if the title refers to the section proposed to be amended, repealed, or modified.

In the case of Guess v. Linton, 236 Ky. 87, 32 S. W. (2d) 718, 719, it is said:

> "It has been so often held by this court that a reference to the particular section to be amended giving the number of the section in the Ky. Stats. was a sufficient compliance with section 51 of the Constitution that it is unnecessary to do more than refer to a few of the cases."

See cases therein cited.

The Legislature could by the title at once turn to the section of the statute proposed to be amended, and since the section when so amended and re-enacted was set forth at length, they could at once learn the nature and extent of the amendment to the statute as re-enacted. It therefore complied with requirements of the Constitution. Commonwealth v. Burk's Springs Distilling Co., 137 Ky. 224, 125 S. W. 306, and cases cited in the opinion in the Spencer Case, supra.

A few lines at the close of appellants' brief are devoted to the contention that the petition discloses a violation of the Corrupt Practice Act (Ky. Stats. sec. 1565bf-1 et seq:), but without citation of authority, counsel merely advances the opinion that the promises alleged to have been made before the fiscal court to ob-

tain votes are a violation of the act the same as if they had been made in a primary or general election. While the question presented is novel and interesting, we find no authority to sustain it, and the act itself does not expressly or impliedly furnish a basis for the argument.

Wherefore, the judgment in both cases is affirmed.