Hillsborough-northern judicial district
No. 2004-552

PATRICK J. LORENZ *& a.*

v.

NEW HAMPSHIRE ADMINISTRATIVE OFFICE OF THE COURTS *& a.*

Submitted: August 30, 2004
Opinion Issued: September 30, 2004

## MEMORANDUM OPINION

PER CURIAM. The petitioners are court stenographers who seek a declaration that the respondents, the New Hampshire Administrative Office of the Courts and the New Hampshire Supreme Court, are equitably estopped from firing them except for good cause based only upon poor job performance or misconduct. They have moved to recuse all current and retired supreme court justices who participated in issuing Administrative Order 2004-02, which initiated the process of terminating the petitioners' employment.

The petitioners assert that disqualification is required because: (1) they challenge an administrative order in which the justices participated; and (2) their lawsuit names the New Hampshire Supreme Court "as a body . . . as a defendant." We hold that neither of these is a valid ground for disqualification.

We nonetheless believe it best to disqualify ourselves because this is a proceeding in which our impartiality might reasonably be questioned. *See* SUP. CT. R. 38, Canons 2A, 3E(1). Accordingly, we conditionally grant the petitioner's motion as it pertains to Justices Dalianis, Duggan and Galway. Chief Justice Broderick and Justice Nadeau have already disqualified themselves for reasons unrelated to the petitioners' motion. We do not rule upon the petitioners' motion to disqualify retired members of the court. Each appellate judge must individually decide whether recusal is required. *See Douglas v. Douglas*, 143 N.H. 419, 427-28 (1999); *see also Kaufman v. Court of Appeal, Etc.*, 647 P.2d 1081, 1084-85 (Cal. 1982); *In re Virginia*

*Elec. & Power Co.*, 539 F.2d 357, 364 (4ᵗʰ Cir. 1976) ("no one judge may, as a matter of discretion, disqualify others").

I

The court issued Administrative Order 2004-02 pursuant to its constitutional authority to administer the courts. *See* N.H. CONST. pt. II, art. 73-a. The petitioners contend that the court is ethically barred from adjudicating a legal challenge to action it took pursuant to its constitutional duty to administer the courts. *See Directive No. 17 v. Vermont Supreme Court*, 576 A.2d 127, 129 (Vt. 1990). In essence, they assert that the court's dual roles as administrator and adjudicator compel disqualification. We disagree.

■ Nothing in the Code of Judicial Conduct requires our recusal on this basis. *See id.* Courts in other jurisdictions have routinely declined to recuse themselves merely because a litigant challenges a court directive. *See, e.g., id.* at 128-32; *see also State v. Criminal Defense Lawyers v. Kaye*, 744 N.E.2d 123, 126-27 (N.Y. 2000); *Kentucky Utilities v. South East Coal*, 836 S.W.2d 407, 408 (Ky. 1992), *cert. dismissed*, 506 U.S. 1090 (1993); *Office of Court Adm'r v. Background Info. Servs.*, 994 P.2d 420, 425-26 (Colo. 1999); *Berberian v. Kane*, 425 A.2d 527, 527-28 (R.I. 1981).

In *Kaye*, for instance, the New York Court of Appeals ruled that the six judges who comprised the court when it issued the challenged order were not disqualified. *Kaye*, 744 N.E.2d at 126-27. The court reasoned that just as a court may reconsider its own rulings, so too may it rule upon the validity of its own administrative orders. *Id.* at 126-27; *see also Kentucky Utilities*, 836 S.W.2d at 408 ("A Justice is not disqualified from consideration of a case by participation in the promulgation of procedure regarding the administration of the Court . . . any more than a Justice who has voted on a case, thereby expressing an opinion on the merits, is barred from considering a petition for rehearing."). As the Vermont Supreme Court has explained: "A court or judicial officer is often called upon to render an opinion of law on a matter on which the court or officer has formally rendered an opinion. Prior knowledge of a legal issue is not grounds to disqualify a judge." *Directive No. 17*, 576 A.2d at 130.

Recusal on this ground is not required particularly because we have not yet opined as to whether Administrative Order 2004-02 is valid. "The fact is that our promulgation of the [administrative order] is not a prior determination that it is valid . . . . That determination must await adjudication in this or a future case." *Id.* If we "were required to determine *in vacuo* by a kind of advisory opinion and without the aid of

briefing and argument" that every administrative order we adopt "is valid from every standpoint," administration of the court "as provided in the Constitution would effectively cease." *Id.*

█ Nor is recusal required merely because the petitioners have named the court as a party. "A judge cannot be disqualified merely because a *litigant* sues or threatens to sue him or her." *Id.* at 132. Recusal is particularly inappropriate on this basis where, as here, the court is named as a party solely because it issued the relevant administrative order, and the petitioners do not allege any personal bias or interest on the part of any individual court member. *See id.*

Moreover, we could not eliminate this ground for disqualification by appointing substitute judges to take our place. *See id.* If we were disqualified merely because the petitioners named the court as a defendant, substitute judges would be disqualified for the same reason; they would assume the institutional character of the court and be subject to the same disqualifications as the court currently composed. *Morgenthau v. Cooke*, 436 N.E.2d 461, 468-69, 469 n.3 (N.Y. 1982).

## II

█ Canon 3E(1) of the Code of Judicial Conduct requires disqualification of a judge "in a proceeding in which the judge's impartiality might reasonably be questioned." SUP. CT. R. 38, Canon 3E(1). "Whether an appearance of impropriety exists is determined under an objective standard, *i.e.*, would a reasonable person, not the judge himself, question the impartiality of the court." *State v. Bader*, 148 N.H. 265, 268 (2002) (quotation omitted), *cert. denied*, 538 U.S. 1014 (2003). "The test for the appearance of partiality is an objective one, that is, whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." *Taylor-Boren v. Isaac*, 143 N.H. 261, 268 (1998) (quotation omitted).

We have no doubt that we could decide this matter fairly and impartially. The circumstances of this appeal are unique, however. In their petition for declaratory relief, the petitioners allege "reliance on repeated promises and agreements, written and oral, by Defendants and/or their duly authorized agents including . . . chief justices of the New Hampshire Superior Court such as . . . Chief Justice Joseph P. Nadeau . . . and Supreme Court Chief Justice John T. Broderick." In rejecting the petitioners' claims, the superior court ruled that "the alleged promises of lifetime employment, made by various chief justices and justices of the superior court, were unauthorized and beyond the scope of their

authority." The superior court further ruled: "[T]he petitioners have failed to allege sufficient facts to support their claim that the chief justice of the supreme court or the supreme court ratified the alleged promises of lifetime employment."

Resolution of this appeal thus requires us to interpret and evaluate the conduct and statements of two of our current colleagues. Should the petitioners prevail in this appeal, their litigation could proceed to trial and our two colleagues could be called as material witnesses. Under these unusual circumstances, although this is a close case, we believe that in the interests of justice it is better for us to resolve all doubts in favor of recusal. *But see Cheney v. U.S. Dist. Ct. Dist. of Columbia*, 124 S. Ct. 1391, 1394 (2004) (Scalia, J.) (denying motion to recuse). We conclude that an objective person, fully informed of these atypical facts, might reasonably doubt our impartiality. Accordingly, we recuse ourselves from this appeal and request that substitute justices be appointed under RSA 490:3 (1997).

Our recusal is conditioned, however, upon there being substitute judges available to sit on this case. In the event that no substitute judge is available, the Rule of Necessity might well compel our participation in this case. The Rule of Necessity provides that "[i]f no judge can be found who possesses the requisite degree of impartiality in regard to a particular case, the rule of necessity dictates that the original judge assigned to the case need not be disqualified despite his or her partiality." M. SHAMAN & a., JUDICIAL CONDUCT AND ETHICS § 4.03, at 111-12 (3d ed. 2000). Under the Rule of Necessity, the actual disqualification of a member of a court of last resort "will not excuse such member from performing his official duty if failure to do so would result in a denial of a litigant's constitutional right to have a question, properly presented to such court, adjudicated." *Grinnell v. State*, 121 N.H. 823, 826 (1981) (quotations omitted); *see also United States v. Will*, 449 U.S. 200, 213-16 (1980). "If this court were to disqualify itself, there would be no other court to which the litigants could turn for a final answer." *State Court Adm'r*, 994 P.2d at 426. Under the Rule of Necessity, we could not abrogate our responsibility to function as the court of last resort. *Id.*

*Motion conditionally granted in part.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.

*Nixon, Raiche, Manning, Casinghino & Leach, P.A.*, of Manchester (*David L. Nixon* and *Leslie C. Nixon* on the motion for recusal), for the petitioners; *Kelly A. Ayotte*, attorney general (*Laura E. B. Lombardi* and *Orville B. Fitch, II*, assistant attorneys general, on the response to the

motion for recusal), for the respondent Administrative Office of the Courts.